Matthew L. Schwartz (admitted *pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Ave.
New York, New York 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
E-mail: mlschwartz@bsfllp.com

Karen Y. Paik (SBN 288851)
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, California 90401
Telephone: (310) 752-2400
Fax: (310) 752-2490
E-mail: kpaik@bsfllp.com

*Attorneys for Claimant*
*912 North Hillcrest Road (BH), LLC*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REAL PROPERTY LOCATED IN BEVERLY HILLS, CALIFORNIA,<br><br>Defendant. | Case No. 16-cv-05377-DSF (PLAx)<br><br>**CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE VERIFIED COMPLAINT FOR FORFEITURE *IN REM* PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Hearing Date: March 13, 2017<br>Time: 1:30 p.m.<br>Place: Courtroom 7D |

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................ vi

PRELIMINARY STATEMENT ......................................................................... 1

RELEVANT ALLEGATIONS ........................................................................... 2

ARGUMENT ...................................................................................................... 4

I.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE
DEFENDANT PROPERTIES ................................................................... 4

    A.    Legal Standard ................................................................................ 4

    B.    The Complaint Fails to State a Claim Under 18 U.S.C.
§ 981(a)(1)(C) ................................................................................ 5

        1.    The Complaint Fails To Allege That Anyone Committed A
Crime ................................................................................... 6

        2.    The Complaint Fails to Plead the Elements of the Alleged
Predicate Specified Unlawful Activity ................................. 11

            a.    The Complaint Does Not Adequately Allege "An Offense
Against A Foreign Nation" ......................................... 11

            b.    The Complaint Does Not Allege a Domestic Wire Fraud ....... 14

            c.    The Complaint Does Not Adequately Allege Scienter ............ 15

    C.    The Complaint Fails to State a Claim Under 18 U.S.C.
§ 981(a)(1)(A) ................................................................................ 16

        1.    The Complaint Fails to Adequately Allege Money Laundering
Because It Fails to Adequately Allege Any Specified Unlawful
Activities ............................................................................. 16

        2.    The Complaint Fails to Allege that the Acquisition of the
Defendant Property Was Intended to Conceal the Source of
Funds ................................................................................... 17

        3.    The Complaint Fails to Allege that the Acquisition of the
Defendant Properties Violated 18 U.S.C. § 1957 ..................... 20

II.    THE COMPLAINT CONCLUSIVELY ESTABLISHES THAT
CLAIMANT IS AN "INNOCENT OWNER" ............................................ 21

III.    THE COMPLAINT SHOULD BE DISMISSED UNDER THE ACT OF
STATE DOCTRINE ................................................................................ 22

CONCLUSION ................................................................................................ 25

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................2, 4, 5, 10

*Banco Nacional de Cuba v. Sabbatino*,
    376 U.S. 398 (1964) ................................................................................24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................4, 5, 10

*D'Angelo v. Petroleos Mexicanos*,
    422 F. Supp. 1280 (D. Del. 1976),
    *aff'd*, 564 F.2d 89 (3d Cir. 1977) ..........................................................24

*Daniels-Hall v. Nationals Educ. Ass'n.*,
    629 F.3d 992 (9th Cir. 2010) ..................................................................23

*de Fontbrune v. Wofsy*,
    No. 14-15790, 2016 WL 5349749 (9th Cir. Sept. 26, 2016) ...................13

*Dowling v. United States*,
    473 U.S. 207 (1985) ................................................................................15

*Federal Treasury Enterprise Sojuzplodoimport v. Spirits International*,
    809 F.3d 737 (2d Cir. 2016) ...................................................................23

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ..................................................21

*In re GlenFed, Inc. Securities Litigation*,
    42 F.3d 1541 (9th Cir. 1994)
    *rev'd on other grounds*, 60 F.3d 591 (9th Cir. 1995)..............................10

*In re Vitamin C Antitrust Litigation*,
    837 F.3d 175 (2d Cir. 2016) ...................................................................24

*Kimberlin v. National Bloggers Club*,
    No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015)...............20

*Liu v. Republic of China*,
    642 F. Supp. 297 (N.D. Cal. 1986)..........................................................24

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) ................................................................................14

*Norex Petroleum Ltd. v. Access Industries, Inc.*,
    631 F.3d 29 (2d Cir. 2010) .....................................................................14

*Petroleos Mexicanos v. SK Engineering & Construction Co.*,
    572 Fed. Appx. 60 (2d Cir. 2014) ...........................................................14

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

i

*Petroleos Mexicanos v. SK Engineering & Construction Co.*,
No. 12 Civ. 9070 (LLS), 2013 WL 3936191 (S.D.N.Y. July 30, 2013)......................14

*Regalado Cuellar v. United States*,
553 U.S. 550 (2008) .................................................................................18

*Republic of Austria v. Altmann*,
541 U.S. 677 (2004) .................................................................................23

*Rubin v. Briscoe*,
No. 12-cv-10140, 2013 WL 1700957 (C.D. Cal. Apr. 18, 2013) ........................20

*Sams v. Yahoo! Inc.*,
713 F.3d 1175 (9th Cir. 2013) .....................................................................21

*Timberlane Lumber Co. v. Bank of America, N.T. & S.A.*,
549 F.2d 597 (9th Cir. 1976) ......................................................................24

*Trader Joe's Co. v. Hallatt*,
835 F.3d 960 (9th Cir. 2016) ......................................................................24

*United States v. $1,399,313.74 in United States Currency*,
591 F. Supp. 2d 365 (S.D.N.Y. 2008) ...........................................................19

*United States v. $39,000 in Canadian Currency*,
801 F.2d 1210 (10th Cir. 1986) .............................................................6, 10

*United States v. All Assets Held in Account No. XXXXXXX*,
83 F. Supp. 3d 360 (D.D.C. 2015) ...............................................................15

*United States v. Daccarett*,
6 F.3d 37 (2d Cir. 1993)...............................................................................4

*United States v. French*,
748 F.3d 922 (9th Cir. 2014)......................................................................20

*United States v. Jinian*,
725 F.3d 954 (9th Cir. 2013)......................................................................15

*United States v. One 2006 Mercedes-Benz R350*,
No. 12-cv-07651, 2013 WL 877724 (C.D. Cal. Mar. 7, 2013).............................6

*United States v. One Gulfstream G-V Jet Aircraft*,
941 F. Supp. 2d 1 (D.D.C. 2013) .................................................................19

*United States v. One Tyrannosaurus Bataar Skeleton*,
No. 12-cv-4760, 2012 WL 3947563  (S.D.N.Y. Sept. 7, 2012).......................6, 16

*United States v. One White Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia*,
No. 11-cv-3582, 2012 WL 8455336 (C.D. Cal. Apr. 12, 2012) ...............11, 18, 21

*United States v. One White Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia*,
No. 11-cv-3582, 2012 WL 8467453 (C.D. Cal. Sept. 6, 2012) ..........................5, 6

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
S A N T A   M O N I C A ,   C A L I F O R N I A

*United States v. Piervinanzi,*
   23 F.3d 670 (2d Cir.1994) ...................................................................20

*United States v. Prevezon Holdings LTD.,*
   122 F. Supp. 3d 57 (S.D.N.Y. 2015) ...............................................14, 15

*United States v. Real Property known as 2291 Ferndown Lane, Keswick VA 22947-9195,*
   No. 10-cv-0037, 2011 WL 2441254 (W.D. Va. June 14, 2011) ...................19

*United States v. Real Property known as Unit 5B of Onyx Chelsea Condo. Located at 261 W. 28th St., N.Y., N.Y. 10001-5933,*
   No. 10 Civ. 5390 (GBD) (FM), 2011 WL 4359924 (S.D.N.Y. Sept. 19, 2011) ..........25

*United States v. Rogers,*
   321 F.3d 1226 (9th Cir. 2003) ............................................................20

*United States v. Sanders,*
   929 F.2d 1466 (10th Cir. 1991) ..........................................................18

*United States v. Savage,*
   67 F.3d 1435 (9th Cir. 1995) ..............................................................17

*United States v. Seward,*
   272 F.3d 831 (7th Cir. 2001) ..............................................................19

*United States v. Ursery,*
   518 U.S. 267 (1996) ...........................................................................6

*United States v. Van Alstyne,*
   584 F.3d 803 (9th Cir. 2009) ..............................................................17

*United States v. Wilkes,*
   662 F.3d 524 (9th Cir. 2011) ..............................................................19

*United States v. Wynn,*
   61 F.3d 921 (D.C. Cir. 1995) .............................................................18

*W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l,*
   493 U.S. 400 (1990) .........................................................................23

**STATUTES**

Malaysian Law: Malaysian Penal Code
   Section 415 ......................................................................................16

Malaysian Law: Malaysian Penal Code
   Section 418 ......................................................................................16

Malaysian Law: Malaysian Penal Code
   Section 166 ......................................................................................16

UAE Law:
   Article 227 ......................................................................................16

iii

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

UAE Law:
    Article 229 ..............................................................................................16

UAE Law:
    Article 5 ..........................................................................................12, 13

United States Code
    Title 18, Section 1343 ...........................................................................10

United States Code
    Title 18, Section 1956 ...........................................................................16

United States Code
    Title 18, Section 1956 (c)(7)(B) ...........................................................11

United States Code
    Title 18, Section 1956(a)(1)(B) ............................................................19

United States Code
    Title 18, Section 1956(a)(1)(B)(i) .........................................................17

United States Code
    Title 18, Section 1956(a)(2)(B) .......................................................17, 19

United States Code
    Title 18, Section 1956(c)(7)(b)(iii) .........................................................7

United States Code
    Title 18, Section 1956(c)(7)(B)(iv) .........................................................8

United States Code
    Title 18, Section 1957 .............................................................16, 20, 21

United States Code
    Title 18, Section 2314 ...................................................................9, 15, 16

United States Code
    Title 18, Section 2315 ...................................................................9, 15, 16

United States Code
    Title 18, Section 981(a)(1)(A) ..........................................................4, 16

United States Code
    Title 18, Section 981(a)(1)(C) .......................................................4, 5, 20

United States Code
    Title 18, Section 983(c) ...........................................................................5

United States Code
    Title 18, Section 983(d)(1) ....................................................................21

United States Code
    Title 18, Section 983(d)(3)(A) ..............................................................21

iv

United States Code
  Title 18, Section 983(d)(3)(A)(i)..................................................................22

United States Code
  Title 18, Section 983(d)(3)(A)(ii).................................................................22

**RULES**

Federal Rule of Civil Procedure
  Rule 44.1.................................................................................................13, 25

Federal Rules of Civil Procedure
  Rule 12(b)(6)...................................................................................................vi

Federal Rules of Civil Procedure
  Rule 12(f)..........................................................................................................3

Federal Rules of Civil Procedure
  Rule 8(a)(2).......................................................................................................4

Local Rules of the United States District Court, Central District of California
  Local Rule 7-3.................................................................................................vi

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture
Actions
  Rule E(2)(a).......................................................................................................4

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture
Actions
  Rule G(1)...........................................................................................................4

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture
Actions
  Rule G(2)(f).......................................................................................................4

**OTHER AUTHORITIES**

January 26, 2016, Press Release, *In Relation to the Investigation Papers Returned
by MACC on SRC International and "Rm2.6 Billion,"* available at
http://bit.ly/1Pzcds5....................................................................................23

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE at 1:30 p.m. on March 13, 2017, or as soon thereafter as the parties may be heard, in the courtroom of the Honorable Dale S. Fischer of the United States District Court for the Central District of California, in Courtroom 7D, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, Claimant 912 North Hillcrest Road (BH), LLC ("Hillcrest" or "Claimant") will and hereby does move the Court for an Order, pursuant to Fed R. Civ. P. 12(b)(6) and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, dismissing Plaintiff United States of America's Verified Complaint for Forfeiture *In Rem* (the "Complaint") based on a failure to state a claim.

This Motion is based on this Notice of Motion and Memorandum of Points and Authorities, the Declaration of Ali Al Hashimi dated January 13, 2017, the complete files and records of this action, and such further evidence or argument as may be presented at or before the hearing on this matter.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 6, 2017.

Dated:   February 10, 2017            Respectfully,

BOIES, SCHILLER & FLEXNER LLP
*Attorneys for Claimant*
*912 North Hillcrest Road (BH), LLC*

 /s/ Matthew L. Schwartz
MATTHEW L. SCHWARTZ

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

# **PRELIMINARY STATEMENT**[1]

At 136 pages and 513 paragraphs long, the Government's Complaint contains allegations of how money allegedly originating with the Malaysian fund 1MDB supposedly ended up being used to purchase various assets.

But despite its length, the Complaint lacks basic and essential detail. Most fundamentally, the Complaint fails to identify who committed the crimes that allegedly give rise to forfeiture. Often written in the passive voice, the Complaint details a number of transactions, but frequently fails to allege who was responsible for them. The Complaint certainly never makes allegations sufficient to conclude that anyone misappropriated money from 1MDB with the requisite scienter, and fails to allege other elements of the underlying offenses, as well. Moreover, the Complaint makes clear that any alleged offenses were committed entirely abroad, without the sufficient nexus to the United States required to invoke the jurisdiction of this Court.

These deficiencies are fatal in this case. The alleged beneficial owner of the Claimant (and therefore the defendant property), Riza Aziz, is neither alleged to have participated in any transactions involving 1MDB nor even to have knowledge of any transactions involving 1MDB—let alone knowledge of any supposed misappropriation. Thus, even taking the Complaint's allegations at face value, Mr. Aziz plainly did not engage in a money laundering transaction or any other offense. But without identifying the person or persons the Government believes to be culpable, it is impossible to test the adequacy of the Government's allegations to determine whether the Complaint "state[s]

---

[1]  Identical motions to dismiss pursuant to Rule 12(b)(6) are being filed on behalf of claimant Park Laurel Acquisition LLC in *United States v. Real Property Located in New York, New York*, No. 16-cv-05371-DSF (concerning "the Park Laurel Condominium"); on behalf of claimant 912 North Hillcrest Road (BH), LLC in *United States v. Real Property Located in Beverley Hills, California*, No. 16-cv-05377-DSF ("Hillcrest Property 1"); and on behalf of claimant Qentas Holdings Limited in *United States v. Real Property Located in London, United Kingdom, Owned by Qentas Holdings*, 16-cv-05380-DSF ("Qentas Townhouse"). All three claimants are alleged to be beneficially owned by the same person, *see* Compl. ¶¶ 318, 329, 498, and the funds used to purchase all three defendant properties are alleged to have come from the same sources, *see id.* ¶¶ 203, 207.

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
S A N T A   M O N I C A ,   C A L I F O R N I A

1  sufficiently detailed facts to support a reasonable belief that the government will be able

2  to meet its burden of proof at trial," as is required in civil forfeiture matters.  Indeed, the

3  only facts that are clearly pled lead to the conclusion that the Claimant is an "innocent

4  owner" under the forfeiture laws.

5  Finally, and separately, the Complaint must be dismissed for another reason: a

6  judgment of forfeiture in this case would require the Court to second-guess and

7  undermine a sovereign decision of the Attorney General of Malaysia.  Under the act of

8  state doctrine, U.S. courts must refrain from doing just that.

### RELEVANT ALLEGATIONS[2]

10  In relevant part, the Complaint alleges that in May 2012, a subsidiary of the

11  Malaysian "strategic investment and development company" 1Malaysia Development

12  Berhad ("1MDB") raised approximately $1.75 billion in a bond issuance in order to

13  partially finance the acquisition of Tanjong Energy Holdings Sdn Bhd.  Compl. ¶¶ 5,

14  122-23, 126.  Those bonds were guaranteed by 1MDB and the International Petroleum

15  Investment Company ("IPIC"), an investment fund wholly-owned by the government of

16  Abu Dhabi.  *Id.* ¶¶ 9, 131.

17  At the same time, 1MDB granted to Aabar Investments PJS Limited ("Aabar-

18  BVI") an option to purchase up to 49% of the Tanjong Energy investment.  *Id.* ¶ 134.[3]

19  1MDB also transferred to Aabar-BVI $576,943,490 in bond proceeds.  *Id.* ¶¶ 146-47.

20  The Complaint alleges that Aabar-BVI transferred a total of $238 million to a

21  Singapore bank account in the name of Red Granite Capital Limited, of which $94.3

22

23  ───────────────
[2]  For purposes of this motion, the Court must assume that the Complaint's non-conclusory allegations are true.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24  [3]  Aabar-BVI was allegedly similarly named to a subsidiary of IPIC called Aabar
25  Investments PJS ("Aabar").  The Complaint alleges, without any factual support, that
   Aabar-BVI was "created and named [by someone who is not identified] to give the
26  impression that it was associated with" Aabar, but that Aabar-BVI "has no genuine
   affiliation with Aabar or IPIC." Compl. ¶ 10.  Elsewhere, however, the Complaint
27  alleges that Aabar-BVI's directors were the Chairman and the CEO of Aabar, and that
   Aabar-BVI's sole shareholder was Aabar, leading to the inference that Aabar-BVI was a
28  legitimate foreign subsidiary of Aabar.  *See id.* ¶¶ 31-32, 156.

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

B O I E S , S C H I L L E R & F L E X N E R L L P
S A N T A   M O N I C A ,   C A L I F O R N I A

million was transferred to an IOLA account at the law firm Shearman & Sterling. *Id.* ¶¶ 202-203, 493. Funds in the Shearman IOLA account were then alleged to have been used to purchase "Hillcrest Property 1," the "Park Laurel Condominium," and the "Qentas Townhouse" (collectively, the "Defendant Properties"). *Id.* ¶¶ 320, 329, 496.[4]

According to the Complaint, the Defendant Properties are owned by entities beneficially owned by Riza Aziz, as is Red Granite Capital Limited. Indeed, Mr. Aziz claimed ownership of the entities in his 2012 U.S. tax return, and properly disclosed the transfer of funds from Aabar-BVI to Red Granite Capital Limited. *Id.* ¶¶ 204, 205, 318, 328, 498. Those funds, according to the Complaint, were reported as a gift under U.S. tax law, and Mr. Aziz, after discussion among his accountants and business manager, obtained a letter documenting the gift, signed by the CEO of Aabar. *See id.* ¶¶ 205, 208, 32. Mr. Aziz also signed the deeds to the Qentas Townhouse and Park Laurel Condominium, as well as a purchase and sale agreement to acquire Hillcrest Property 1. *Id.* ¶¶ 317, 329, 496.

Importantly, nothing in the Complaint alleges that Mr. Aziz was involved in any way with transactions directly involving 1MDB, knew that the source of funds that Red Granite Capital Limited received was allegedly from 1MDB (directly or indirectly), or knew that Aabar-BVI was unaffiliated with Aabar or IPIC.

---

[4]    According to the Complaint, in addition to allegations about Aabar-BVI, funds were misappropriated from 1MDB in two other "phases." These other phases relate to entities known as Good Star and Tanore, and the Complaint alleges that funds derived from these other phases were used to purchase other assets. *See* Compl. ¶ 4. However, no funds involved in the Good Star or Tanore phases are allegedly traceable to the Defendant Properties, so allegations about those phases, or about the properties involved in the Government's other 15 cases, are "immaterial" and "impertinent" and should be disregarded. Fed. R. Civ. P. 12(f).

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

## <u>ARGUMENT</u>

### I.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE DEFENDANT PROPERTIES

The Complaint contains two essential theories of civil forfeiture.  Its first claim, under 18 U.S.C. § 981(a)(1)(C), alleges that the Defendant Properties are "traceable" to the "proceeds" of specified unlawful activity.  Compl. ¶¶ 502-504.  Its second, third, and fourth claims, under 18 U.S.C. § 981(a)(1)(A), allege that the Defendant Properties were "involved in" different kinds of money laundering offenses.  *Id.* ¶¶ 505-513.  But notwithstanding its detailed allegations with respect to certain aspects of these transactions, the Complaint fails to adequately plead any cognizable theory of liability as to the Defendant Properties.

#### A.   Legal Standard

Unlike most civil actions, in which the plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the Government's complaint in a civil forfeiture case must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Supp. R. G(2)(f).[5]  This heightened pleading standard is necessary in light of the "drastic nature" of civil forfeiture.  *United States v. Daccarett*, 6 F.3d 37, 47 (2d Cir. 1993) ("The particularity-of-pleading requirements in forfeiture cases provide a way of ensuring that the government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim.") (internal quotations omitted)).

"In addition, forfeiture in rem complaints must also meet the familiar *Iqbal/Twombly* plausibility standard."  *United States v. One White Crystal Covered Bad*

---

[5]   *See also* Supp. R. E(2)(a) ("the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading"); *see generally* Supp. R. G(1) (incorporating Supplemental Rule E into civil forfeiture actions).

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

*Tour Glove and Other Michael Jackson Memorabilia*, No. 11-cv-3582, 2012 WL 8467453, at *2 (C.D. Cal. Sept. 6, 2012) ("*Michael Jackson Memorabilia II*"); *see generally Iqbal*, 556 U.S. 678 (complaint must allege "sufficient factual matter" to state a "plausible" claim); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (court should disregard "labels and conclusions, and a formulaic recitation of the elements of a cause of action" in assessing complaint).

Ultimately, the Government must satisfy its burden:

> In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property—
>
> (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
>
> *        *        *
>
> (3) if the Government's theory of forfeiture is that the property was . . . involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c).

Taken together, these standards require the government to plead "sufficiently detailed facts" that are plausible and non-conclusory, and that "support a reasonable belief that the government will be able to meet its burden of proof" in demonstrating that the defendant properties are subject to forfeiture and (for certain theories) that there was a "substantial connection between the property and the offense."

## B.     The Complaint Fails to State a Claim Under 18 U.S.C. § 981(a)(1)(C)

The Complaint's first claim for forfeiture fails for a simple reason: it does not allege who supposedly committed what crime. Although the Complaint identifies four alleged kinds of specified unlawful activity, nowhere does it identify allegedly criminal acts, or who committed them. But it is fundamental to civil forfeiture that *someone* must have committed a crime. The failure to specifically allege who committed what crime

5

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

1   renders the Complaint hopelessly defective.  *See United States v. $39,000 in Canadian*

2   *Currency*, 801 F.2d 1210, 1220 (10th Cir. 1986).  The Complaint is also deficient with

3   respect to its allegations of the particular specified unlawful activities.

4          **1.**      **The Complaint Fails To Allege That Anyone Committed A Crime**

5        Even though civil forfeiture cases proceed *in rem*, *see United States v. Ursery*, 518

6   U.S. 267, 284 (1996), the Government has the burden of showing that *someone* has

7   committed a crime that could give rise to forfeiture.  *See United States v. One*

8   *Tyrannosaurus Bataar Skeleton*, No. 12-cv-4760, 2012 WL 3947563, at *2 (S.D.N.Y.

9   Sept. 7, 2012) ("The Verified Complaint must set forth a basis for believing that some

10  person who engaged in the prohibited conducted [sic]—not necessarily the claimant—

11  had the requisite knowledge.").  It is for that reason that civil forfeiture complaints filed

12  in this District routinely identify who allegedly committed the offense giving rise to

13  forfeiture.  *See, e.g.*, *United States v. One 2006 Mercedes-Benz R350*, No. 12-cv-07651,

14  2013 WL 877724 (C.D. Cal. Mar. 7, 2013) (identifying the perpetrator of alleged wire

15  fraud and money laundering); *Michael Jackson Memorabilia II*, 2012 WL 8467453

16  (identifying who engaged in the alleged extortion and/or misappropriation, theft, or

17  embezzlement).[6]

18  ⎯⎯⎯⎯⎯⎯⎯⎯⎯

19  [6]     The Complaints in both the *One 2006 Mercedes-Benz* and *Michael Jackson*
    *Memorabilia* cases, attached hereto as Exhibits A and B, explicitly allege who the

20  Government believed had committed the underlying crimes.  *See* Complaint ¶ 9, *United*
    *States v. One 2006 Mercedes-Benz R350*, No. CV12-7651-ODW-JEM (C.D. Cal. filed

21  Sept. 6, 2012) ("On or about January 2006 and continuing into 2011, Cuccia embezzled
    substantial sums of money from his former employer, Lionsgate Entertainment, . . . in a

22  kickback scheme he orchestrated with Larry Collins") (attached as Exh. A); Second
    Amended Complaint ¶¶ 31-32, *Michael Jackson Memorabilia*, No. 11-cv-03582-GW-SS

23  (C.D. Cal. filed June 11, 2012) (alleging that "Nguema and other members of the Inner
    Circle have gained enormous wealth through violations of E.G. law, including extortion,

24  bribery and the misappropriation, theft, and embezzlement of public funds," and that
    "Nguema, Michael J. Berger . . . , and George Nagler . . . , and others engaged in a

25  conspiracy to commit bank fraud against financial institutions in the United States")
    (Exh. B); *see also, e.g.*, Complaint ¶ 8, *United States v. $29,400.00 in U.S. Currency*, No.

26  14-cv-00722-JVS-AN (C.D. Cal. filed May 16, 2014) (alleging that "Quang (also known
    as 'Tony') and Tran were conspiring with Pham to transport the proceeds of transactions

27  in controlled substances") (Exh. C); Complaint ¶ 7, *United States v. Real Prop. in Safety*
    *Harbor, Florida*, No. 09-cv-00716-JVS-AN (C.D. Cal. filed June 17, 2009) ("The

28  government alleges that while aboard the cruise ship, Kocontes strangled Kanesaki to

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

1     The Complaint in this case, however, is conspicuously silent on this point. To be

2  sure, it alleges an "international conspiracy to launder money misappropriated" from

3  1MDB—but it fails to identify the alleged co-conspirators, or the allegedly criminal acts.

4  Compl. ¶ 5. At best, it at various points asserts that "1MDB officials and others

5  misappropriated and fraudulently diverted" money. *Id.* ¶ 9.[7] Given that the Complaint

6  identifies multiple relevant 1MDB officials, however, this allegation (which is of course

7  purely conclusory) provides no guidance.

8     The Complaint's deficiency in this regard is compounded by the variety of

9  specified unlawful activities alleged. For example, it alleges that the Defendant

10  Properties are traceable to fraud by or against a foreign bank, a violation of 18 U.S.C.

11  § 1956(c)(7)(b)(iii). But nowhere does the Complaint allege (by name or otherwise)

12

13  death and threw her overboard into the sea.") (Exh. D); Complaint ¶ 12, *United States v.
$61,098.00 in Money Orders*, No. 08-cv-06066-DSF-CW (filed Sept. 16, 2008)

14  (describing fraudulent student visa scheme and alleging that from "in or about 1999, and
continuing to on or about April 9, 2008, in Los Angeles County, Zaman, and others,

15  knowingly and with intent to defraud, devised, participated in, and executed a scheme to
defraud and to obtain money and property by means of false and fraudulent material

16  pretenses and representations, and the concealment of material facts.") (Exh. E). Even
when the Government declines to identify the person by their proper name, civil

17  forfeiture complaints in this District typically identify the alleged perpetrator with
particularity. *See, e.g.*, Complaint ¶ 9, *United States v. $985,000.00 in Escrow Funds*,

18  No. 14-cv-09114-DMG-E (C.D. Cal. filed Nov. 25, 2014) (alleging that the "owner" of a
specific "retail store" use the store to fence stolen merchandise, and "directed associates

19  to conduct robberies/burglaries targeting high-end merchandise, at times even providing
co-conspirators with residential addresses to rob/burglarize") (Exh. F).

20

21  [7]     A single paragraph of the Complaint identifies three individuals (none of whom are
alleged to be 1MDB officials) who allegedly "knew that [certain] funds had been

22  misappropriated from 1MDB and/or IPIC, and they intended to deprive 1MDB and/or
IPIC of ownership over the funds." Compl. ¶ 185. That allegation, made "upon

23  information and belief," relates solely to certain downstream transactions between the
entities the Complaint refers to as Aabar-BVI, Blackstone, and Vasco, and its allegations

24  of knowledge are limited to "at the time" of those downstream transactions. *Id.* The only
other explicit allegations of knowledge or wrongdoing in the Complaint relate to even

25  more remote transactions, involving the acquisition of other properties allegedly subject
to forfeiture in the related cases. *See* Compl. ¶ 384 (alleging, upon information and

26  belief, that an individual knew funds misappropriated from 1MDB were used to invest in
EMI Music); ¶ 414 (alleging, upon information and belief, that an individual knew funds

27  misappropriated from 1MDB were used to invest in the Park Lane Hotel). There are no
allegations anywhere in the Complaint that anyone knew funds were being

28  misappropriated from 1MDB at the time of the alleged misappropriation.

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

BOIES,  SCHILLER  &  FLEXNER  LLP
SANTA  MONICA,  CALIFORNIA

1    *which* foreign bank was defrauded in a transaction traceable to the Defendant Properties.

2    The allegations concerning the "Aabar-BVI Phase" do not mention any foreign banks

3    other than to identify where certain accounts were held, and there is no allegation that any

4    of them were defrauded, misled, or exposed to the risk of loss in any way. *See, e.g.*,

5    Compl. ¶¶ 145, 146.  Even when the Complaint alleges that "false" statements or

6    documents were provided to foreign banks (in connection with other "phases" not

7    traceable in any way to the Defendant Property), it offers no allegation or reason to

8    believe that the person who made the relevant statement or presented the relevant

9    document *knew* it to be false at the time.  *See, e.g.*, *id.* ¶¶ 43, 64, 67, 76.[8]

10    Likewise, the Complaint alleges that the Defendant Properties are traceable to a

11    foreign offense under Malaysian or United Arab Emirates law involving the

12    misappropriation of public funds by or for the benefit of a public official, in violation of

13    18 U.S.C. § 1956(c)(7)(B)(iv).  But, again, the Complaint fails to allege who the relevant

14    public official might be.  As alleged, funds travelled from 1MDB to Aabar-BVI to Red

15    Granite Capital Limited to Shearman & Sterling, where they were used to pay for the

16    Defendant Properties.  Since Mr. Aziz—whom the Complaint describes as being in the

17    motion picture industry, *see* Compl. ¶ 204—is alleged to be the beneficial owner of the

18    Defendant Properties, the funds plainly were not used "for the benefit of" a public

19    official.  That leaves the possibility that the funds were misappropriated "by" a public

20    official.  But who?  To be sure, the Complaint alleges that various people were "public

21    officials."  *See id.* ¶¶ 25-28, 31.  But the only acts of "public officials" alleged to be

22    involved in conduct resulting in the creation or transfer of funds used to purchase the

23    ───────────────────────────

24    [8]    As an example (not in any way related to the Aabar-BVI phase or the Defendant
      Properties), the Complaint alleges that a statement by one person in May 2011 was

25    "materially inconsistent" with a representation made by someone else nearly two years
      earlier, in September 2009.  Compl. ¶ 97.  At best, an allegation like this demonstrates

26    that one of those two people was wrong.  But without some reason to believe that the
      later speaker was aware of the earlier statement, the Complaint does not adequately allege

27    that the statement was *knowingly* false.  Worse, in this particular example, it is the earlier
      statement that is supposedly false.  Plainly the earlier speaker could not have been aware

28    of something said almost two years later.

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
S A N T A   M O N I C A ,   C A L I F O R N I A

Defendant Properties (*i.e.*, in the "Aabar-BVI Phase") is entirely innocent:

- 1MDB Officer 2 signed an engagement agreement with Goldman Sachs relating to the bond issuance.  Compl. ¶ 123.
- 1MDB Officer 3 served as "a primary point of contact" with Goldman Sachs.  *Id.* ¶ 124.
- Agreements related to IPIC's guarantee of the bonds were signed by 1MDB Officer 2 and the Chairman of Aabar.  *Id.* ¶ 131.
- The agreement granting Aabar-BVI options to purchase an interest in Tanjong Energy was signed by 1MDB Officer 2 (and another person who is not alleged to be a "public official").  *Id.* ¶ 134.

That is the sum total of the Complaint's allegations regarding the conduct of alleged "public officials" in generating the funds that are supposedly traceable to the Defendant Properties.[9]  Notably, the Complaint does not allege who directed a single payment in the alleged chain between 1MDB and the Defendant Properties; instead it relies on the passive voice.  *See, e.g.*, Compl. ¶ 202 (alleging that money "was transferred directly" between accounts).  By filing a single form complaint in all 16 cases, the Government's pleading sweeps in numerous allegations that simply have nothing to do with conduct that allegedly gives rise to the forfeiture of the Defendant Properties.  But stripped of this extraneous material, the *relevant* allegations are simply insufficient.

Next, the Complaint alleges that the Defendant Properties are traceable to international transportation of stolen property or money, in violation of 18 U.S.C. §§ 2314-2315.  These statutes both require someone to "knowing[ly]" transfer or receive stolen property or money.  So who is the person that the Complaint alleges acted

---

[9]     The same section of the Complaint makes other reference to "public officials" without describing any actions allegedly taken by them.  For example, the Complaint describes a Certificate of Incumbency, which stated that Aabar-BVI was incorporated in March 2012, that its directors were Aabar's Chairman and its CEO, and that its sole shareholder was Aabar.  Compl. ¶ 156.  There is no allegation that Aabar's Chairman or CEO were involved with either creating Aabar-BVI or obtaining this Certificate.  *See id.* ¶¶ 157-58.

"knowingly"?  Who, for that matter, "stole" the property or money in the first place?  The Complaint does not say.

Finally, the Complaint alleges that the Defendant Properties are traceable to the proceeds of wire fraud, in violation of 18 U.S.C. § 1343.  Again, the Complaint does not identify the acts of alleged wire fraud.  The Complaint *does* allege that the offering circular for 1MDB's bonds "contained misleading statements and omitted material facts necessary to make its representations not misleading"—language that evokes the anti-fraud statutes.  Compl. ¶ 133.  Even putting aside that these are the sort of conclusory allegations and legal recitations that courts must ignore under *Iqbal* and *Twombly*, the Complaint is silent on who made these misleading statements and omissions, and whether they were made with the requisite intent to defraud.  *See, e.g.*, *$39,000 in Canadian Currency*, 801 F.2d at 1220 (affirming dismissal of civil forfeiture complaint where "the complaint fails to assert facts supporting a reasonable inference that the money was involved in a drug transaction.  It specifies no date or location of any purported or intended exchange, no dollar amount of such an exchange, no specific type or quantity of controlled substance, and no identified participant . . . . These claims of unidentified parties and unspecified conduct neither give a claimant a reasonable starting point from which to initiate a meaningful investigation nor permit a responsive pleading that can address identities, quantities, locations, or dates of an alleged offense.  These unsupported and conclusory allegations do not meet any definition of the word 'particularity.'").

At best, the Complaint alleges that one of the world's most well-known investment banks issued an offering circular containing statements that turned out not to be true. That is not sufficient to state a claim for wire fraud.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 1994) ("[I]t is clearly insufficient for plaintiffs to say that the later, sobering revelations make the earlier, cheerier statement a falsehood . . . . [A] plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made*."), *rev'd on other*

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

1   *grounds*, 60 F.3d 591 (9th Cir. 1995).

2         **2.    The Complaint Fails to Plead the Elements of the Alleged**
3               **Predicate Specified Unlawful Activity**

4         In addition to its most basic failing—not alleging *who* supposedly committed *what*

5   crime, or a basis to infer that anyone acted with the requisite intent—the Complaint also

6   does not adequately allege several material elements of the offenses that supposedly give

7   rise to forfeiture.  Because the Government has failed to adequately allege a predicate

8   specified unlawful activity, its forfeiture claims must fail.  *United States v. One White*

9   *Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia*, No. 11-cv-

10  3582, 2012 WL 8455336, at *3 (C.D. Cal. Apr. 12, 2012) ("*Michael Jackson*

11  *Memorabilia I*") ("[T]he Government must, at a minimum, plead specific allegations that

12  specific instances of criminal activity took place.").

13        **a.    The Complaint Does Not Adequately Allege "An Offense**
14              **Against A Foreign Nation"**

15        The Complaint fails to adequately plead violation of foreign law.  With respect to

16  the alleged violations of UAE law, the Complaint does not adequately allege that any

17  relevant person was a "public official" under UAE law.  *See* 18 U.S.C. § 1956 (c)(7)(B)

18  (iv).[10]  Instead, the Complaint assumes that Aabar's Chairman (who was also IPIC's

19  Managing Director) is a "public official" under UAE law, Compl. ¶ 31, presumably

20  because IPIC and Aabar are owned by the UAE government.  *Id.* ¶¶ 20-21.

21        This conclusory assertion is wrong: the fact that IPIC and Aabar are owned by the

22  UAE government does not transform them into governmental agencies, nor their

23  employees into public officials.  The Complaint seemingly acknowledges this fact,

24  alleging only that Aabar's Chairman was a public official, but not its CEO.  *Id.* ¶¶ 30-31.

25        The Complaint's error is grounded in two simple mistranslations of UAE law.  As

26
27  [10]    For the reasons stated in Section I.B.1, *supra*, the Complaint fails to adequately
        allege any violation of Malaysian law related to the Aabar-BVI Phase—the only phase
28      allegedly giving rise to the forfeiture of the Defendant Asset.

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

described in the accompanying Declaration of Ali Al Hashimi ("Al Hashimi Decl."), the Complaint erroneously translates the relevant UAE law to read "[t]he following shall ipso jure be considered a public official."  *See* Compl., Attachment B.  But properly translated, that section refers to "public employees" (Al Hashimi Decl. ¶ 8), not public officials—an important distinction.  The Complaint similarly mistranslates another phrase from Article 5, subsection 5, as "associations and public corporations"; properly translated, the phrase refers to "public institutions and establishments."  *Id.*  As the Al Hashimi Declaration makes clear, these subtle mistranslations obscure key distinctions that render the Complaint's allegations insufficient under UAE law.

As detailed in the Al Hashimi Declaration, UAE law distinguishes between public employees—who are employees of the public sector—and public *officials*, who are a subset of public employees with "administrative, legislative or judicial positions whether elected or appointed; they are decision-makers and have certain authorities given to them by law."  *Id.* ¶ 9(b).  Put differently, to be a public official under UAE law requires more than just employment in the public sector.

Applying these standards, the Complaint's allegation that Aabar's Chairman was a "public official" under UAE law simply because Aabar and IPIC are owned by the government of the UAE is insufficient.  He is not alleged to occupy an "administrative, legislative or judicial position[]" or to "have certain authorities given to [him] by law."  *Id.* ¶ 9(b).

Even if the terms "public official" and "public employee" were interchangeable— and they are not (*id.* ¶¶ 8-9)—employees of IPIC and Aabar are not even clearly public *employees* under UAE law.  As described in the Al Hashimi Declaration, government-owned companies such as IPIC and Aabar are not necessarily "public institutions and establishments" (the proper translation) under Article 5.  To the contrary, although IPIC was established by law and is state-owned, it is "a private commercial enterprise and its employees cannot be deemed to be public officials or even public employees."  *Id.* ¶ 9(e)

(also describing decision of UAE Federal Supreme Court holding that state-owned telecom operator—established by law and whose board is chaired by the minister of transportation and includes five members appointed by the Council of Ministers to represent the government—is a private corporation rather than a public establishment).

Finally, even assuming that Aabar and IPIC are "public institutions and establishments," and that Aabar's Chairman was a "public official," the Complaint still fails to plead a claim under UAE law.  As the Al Hashimi Declaration explains, Article 5 is inapplicable where a public employee's acts are outside his role as a public employee. *Id.* ¶ 12.  In such cases, the person would be punished under the general provisions of the Penal Code rather than those specifically applicable to public employees. *Id.*  Here, the Complaint alleges that money from 1MDB was diverted to Aabar-BVI, *see* Compl. ¶ 118, while at the same time alleging that Aabar-BVI "was not a legitimate subsidiary of Aabar or IPIC *operating within the bounds of any authority granted by Aabar or IPIC*," *id.* ¶ 158 (emphasis supplied).  Taking these (entirely conclusory) allegations as true, the only reasonable inference is that to the extent any Aabar or IPIC officers were involved with Aabar-BVI, they did so outside of "the bounds of any authority granted by Aabar or IPIC"—rendering Article 5 inapplicable.

For these reasons, the forfeiture claims based on UAE law fail.  To the extent there is any dispute about what UAE law requires, moreover, open questions should be resolved at the threshold.  Under Federal Rule of Civil Procedure 44.1, questions of foreign law are legal issues to be decided by the Court at the pleading stage, where the Court can determine whether the complaint states a claim under the foreign law and (if it does) define relevant questions for discovery and trial. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016) (directing courts to "consider[] foreign legal materials—including expert testimony and declarations—at the pleading stage").

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

### b.   The Complaint Does Not Allege a Domestic Wire Fraud

To adequately plead wire fraud, the Complaint must allege facts that, if proven, would establish an offense that is "sufficiently domestic" to be actionable under U.S. law. *See United States v. Prevezon Holdings LTD.*, 122 F. Supp. 3d 57, 70 (S.D.N.Y. 2015) ("*Prevezon Holdings*").  The Complaint's allegations of wire fraud contain no such facts, and cannot overcome the presumption against extraterritoriality. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010) ("[T]he presumption against extraterritoriality would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.").

In *Prevezon Holdings* (a civil forfeiture action), the court held that a wire transfer that was routed through New York was not sufficient to overcome the presumption against the wire fraud statute's extraterritorial application.  122 F. Supp. 3d at 71. Likewise, in *Petroleos Mexicanos v. SK Engineering & Construction Co.*, 572 Fed. Appx. 60, 61 (2d Cir. 2014) (unpublished), the Second Circuit affirmed the dismissal of a RICO claim predicated on wire fraud, despite three domestic contacts: (i) obtaining financing, (ii) sending invoices to a U.S. bank for payment, and (iii) having the bank issue payment in the United States. *Id.*  The District Court in that case had held that the claims were extraterritorial notwithstanding these domestic acts because "they allege a foreign conspiracy against a foreign victim conducted by foreign defendants participating in foreign enterprises."  No. 12 Civ. 9070, 2013 WL 3936191, at *3 (S.D.N.Y. July 30, 2012), *aff'd* 572 Fed. Appx. 60, 61 ("The allegations of domestic conduct are simply insufficient").  *See also Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 33 (2d Cir. 2010) ("simply alleging that some domestic conduct occurred cannot support a claim of domestic application [of a RICO claim]").

Here, the Aabar-BVI phase falls short of even the level of domestic contact present in *Petroleos Mexicanos*.  The Complaint alleges the existence of a wholly foreign scheme: the alleged conspirators (whoever they are) were located abroad, took all

14

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

relevant action while abroad, and used foreign banks to further their alleged scheme.  The only domestic contact alleged to give rise to forfeiture in the Complaint is that some of the alleged wire transfers were processed through U.S. correspondent bank accounts. *See, e.g.*, Compl. ¶¶ 145, 146, 150, 152.[11]

Of course, certain of the Defendant Properties are themselves in the United States. But where wire fraud is the specified unlawful activity to which the funds for the Defendant Properties are allegedly traceable, the purchase of the property itself cannot be the required domestic contact, as the underlying violation would effectively merge into the transaction in question.  That is, if the property is traceable to the "proceeds" of wire fraud, then the wire fraud necessarily predated the property's acquisition.  *See Prevezon Holdings*, 122 F. Supp. 3d at 72 (government's argument "confuses the underlying SUA (by the Organization) with the later alleged money laundering (by [defendant])").  For similar reasons, any domestic activity related to the "Good Star" or "Tanore" phases— which, to be clear, also consists only of correspondent banking activity, *see, e.g.*, Compl. ¶¶ 104-105—or related to the acquisition of any of the defendant assets in the 15 other civil forfeiture actions filed by the Government, are irrelevant to determining whether the Defendant Property in this case represents the proceeds of a sufficiently domestic wire fraud.

### c.    The Complaint Does Not Adequately Allege Scienter

Each of the four alleged specified unlawful activities also requires the Government to plead scienter.  *See United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (wire fraud); *United States v. All Assets Held in Account No. XXXXXXX*, 83 F. Supp. 3d 360, 375 (D.D.C. 2015) (18 U.S.C. §§ 2314 and 2315); *see also Dowling v. United States*, 473 U.S. 207, 214 (1985) (Section 2314).  And both the Malaysian and UAE laws cited in the

---

[11]    Many of these alleged transfers are in no way traceable to the Defendant Properties.

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

Complaint likewise contain scienter requirements.[12]

The Complaint is devoid of allegations of scienter, save for a few conclusory labels. This is, of course, a corollary to the fact that the Complaint fails to state who allegedly committed any offense. But beyond simply identifying an alleged perpetrator, the Complaint must allege that that person acted with the requisite intent, which it fails to do. *See One Tyrannosaurus Bataar Skeleton*, 2012 WL 3947563, at *2 (dismissing civil forfeiture alleging violations of 18 U.S.C. §§ 2314 and 2315: "the Verified Complaint must set forth a basis for believing that some person who engaged in the prohibited conducted [sic]—not necessarily the claimant—had the requisite knowledge").

## C.    The Complaint Fails to State a Claim Under 18 U.S.C. § 981(a)(1)(A)

The Complaint's second, third, and fourth claims fare no better than its first. Those claims, under 18 U.S.C. § 981(a)(1)(A), allege that the Defendant Properties were "involved in" a money laundering transaction. But the Complaint does not allege a plausible basis for believing that the acquisition of the Defendant Properties—the purchase of real estate at significant prices that the Complaint does not claim were anything other than fair market prices—represents an act of money laundering.

### 1.    The Complaint Fails to Adequately Allege Money Laundering Because It Fails to Adequately Allege Any Specified Unlawful Activities

All offenses under 18 U.S.C. §§ 1956 and 1957 are of course predicated upon an underlying commission of some specified unlawful activity. For the reasons given above,

---

[12]    *See, e.g.*, UAE Law [as translated in Attachment C to the Complaint] Article 227 ("Punishment by term imprisonment shall be inflicted upon any public official . . . who *willfully prejudices* such an interest in order to gain advantage for himself or for another person); Article 229 ("A prison term not exceeding five years shall be inflicted upon any one who *willfully commits* an act of fraud" (emphases added)); *see also* Al Hashimi Decl. ¶ 10.

Malaysian Penal Code [as translated in Attachment B to the Complaint] Section 166 ("whoever, being a public servant, *knowingly*…"); Section 405 ("whoever . . . *dishonestly* misappropriates . . ."); Section 415 ("whoever . . . (a) *fraudulently or dishonestly* . . . (b) *intentionally* induces . . ."); Section 418 ("whoever cheats *with knowledge* . . ." (emphases added)).

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

the Complaint fails to adequately allege any such offense, and as a result its money laundering allegations also must fail. *See United States v. Savage*, 67 F.3d 1435, 1441 (9th Cir. 1995) ("Congress considered money laundering to be separate conduct occurring after the completion of the underlying criminal offense."), *partially abrogated on other grounds*, *United States v. Van Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009).

### 2.   The Complaint Fails to Allege that the Acquisition of the Defendant Property Was Intended to Conceal the Source of Funds

The Complaint's third and fourth claims allege that the Defendant Properties were "involved in" a money laundering transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and § 1956(a)(2)(B), *i.e.*, a transaction in the proceeds of specified unlawful activity that was knowingly "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," or (in the case of Section 1956(a)(2)(B) only) to "avoid a transaction reporting requirement." But the Complaint does not allege that the purchases of the Defendant Properties were designed to conceal or avoid anything.

Far from alleging concealment, the Complaint alleges that Mr. Aziz—the alleged beneficial owner of the Defendant Properties—engaged in each transaction openly and transparently. The Complaint states, for example, that he claimed beneficial ownership of the various entities that possessed, directly or indirectly, the Defendant Properties on his U.S. tax returns. *See* Compl. ¶¶ 318 (Kreger Trading Inc. / Hillcrest Property 1), 328 (Sorcem Investments Inc. / Park Laurel Condominium), 498 (Qentas Holdings Limited / Qentas Townhouse). He also is alleged to have signed all of the relevant transaction documents in his own name. *Id.* ¶¶ 317 (Hillcrest Property 1), 326 (Park Laurel Condominium), 496 (Qentas Townhouse).

These facts—which the Government itself alleges—are simply inconsistent with any conceivable allegation that the transactions were "designed" to "conceal or disguise." Indeed, numerous courts have found that the "undisguised purchase, registration, and

17

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

use" of property that is allegedly the illegal proceeds of money laundering is "inconsistent with a motivation to conceal the ownership of the illegal proceeds." *See United States v. Wynn*, 61 F.3d 921, 925 (D.C. Cir. 1995) (citing *United States v. Sanders*, 929 F.2d 1466, 1472-73 (10th Cir. 1991)).

The Complaint simply does not allege that anyone intended to disguise anything in these transactions. The 33 paragraphs (out of 513) devoted to all three Defendant Properties together contain no allegations of scienter related to the real estate transaction, the property owners (Claimants Qentas Holdings Limited, Park Laurel Acquisition LLC, and 912 North Hillcrest Road (BH), LLC), or their alleged beneficial owner, Mr. Aziz. Moreover, the Complaint does not make any allegations that would permit the inference that Mr. Aziz knew that funds used to acquire the properties were traceable to 1MDB (let alone any crime), or that the real estate transaction itself had some purpose to conceal or disguise criminal activity.[13] According to the Complaint, Mr. Aziz was not involved in any transaction with 1MDB and was not involved in any conversation or written exchange concerning 1MDB whatsoever. Indeed, the face of the Complaint offers no basis to infer that Mr. Aziz had even *heard* of 1MDB at the time of these transactions.

---

[13]   With respect to Hillcrest Property 1, the Complaint alleges its acquisition was done in a way "to obscure the ownership, source, and control of the assets." Compl. ¶ 322. The only basis for this entirely conclusory allegation is that the property was sold "through the sale of a holding company . . . rather than the direct sale of the property itself." *Id.* This allegation is wholly insufficient to support a plausible claim of concealment money laundering. Real estate is regularly transferred in this manner, for many entirely legitimate reasons, and the Complaint contains no non-conclusory motive for the transaction. *See Michael Jackson Memorabilia I*, 2012 WL 8455336, at *5 (finding that Claimant's "use of shell companies and corporations . . . to purchase luxury items, are commonplace financial arrangements and do not readily, without further allegations, support the reasonable belief that the Government will be able to meet its burden of proof at trial."). Moreover, this is not the sort of transaction that can support a concealment charge as a matter of law. The Supreme Court has held that in order to constitute concealment, the transaction itself must be *designed* to conceal—it is not enough to allege that the manner in which the transaction occurred was confidential. *Compare Regalado Cuellar v. United States*, 553 U.S. 550, 563 (2008) (holding "merely hiding funds during transportation is not sufficient to violate the statute, even if substantial efforts have been expended to conceal the money. . . . In this context, 'design' means purpose or plan; *i.e.*, the intended aim of the transportation.") *with* Compl. ¶ 322 (transfer was "effectuated" through sale of holding company to conceal).

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

*See United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 15 (D.D.C. 2013) (dismissing complaint that alleged "inner circle" of corrupt officials stole public funds from Equatorial Guinea, noting that "careful scrutiny of the complaint reveals that [the Claimant] is often implicated by association only" and "other allegations make no mention of [the Claimant] whatsoever").

Finally, to the extent that the Complaint alleges that the Defendant Properties are "traceable to property involved in" a money laundering transaction, it may not point to the alleged theft of funds from 1MDB or misappropriation from IPIC as a money laundering transaction.  "[T]ransactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction."  *United States v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011) (quoting *United States v. Seward*, 272 F.3d 831, 836 (7th Cir. 2001)).

Because the Complaint fails to allege that the purchases of the Defendant Properties were intended to conceal or disguise anything, its third and fourth claims must be dismissed.  *See United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 373 (S.D.N.Y. 2008) (dismissing forfeiture action because "the Government does not allege that Claimants knew that their transactions with [peso broker] were 'designed . . . to conceal or disguise.'"); *United States v. Real Prop. known as 2291 Ferndown Lane, Keswick VA 22947-9195*, No. 10-cv-0037, 2011 WL 2441254, at *6 (W.D. Va. June 14, 2011) (dismissing 1956(a)(1)(B) claim where "[n]owhere . . . does the government allege that the purchase of the Defendant Property was consummated *in order to* conceal the source of illicit funds").

The Complaint's fourth claim is deficient for one additional reason: money laundering in violation of 18 U.S.C. § 1956(a)(2)(B) requires allegations that funds were transferred internationally into or out of the United States.  As alleged, the only transfer involved in the acquisition of any of the Defendant Properties (as distinct from the alleged underlying theft) that travelled internationally were those funds transferred from

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

Red Granite Capital Limited's accounts in Singapore to the Shearman IOLA in the United States, which ultimately were used to buy all three of the Defendant Properties. *See* Compl. ¶¶ 206-207.  This transfer is alleged to have been executed by Mr. Aziz, *id.* ¶ 206, but as explained above, the Complaint does not allege facts giving rise to an inference that he acted either with the intent to conceal—he disclosed the transfer in his U.S. taxes, *see id.* ¶¶ 318, 328, 498—or that he knew the funds represented the proceeds of specified unlawful activity.

### 3.  The Complaint Fails to Allege that the Acquisition of the Defendant Properties Violated 18 U.S.C. § 1957

The Complaint's second claim for relief alleges that the Defendant Properties were "involved in" a violation of 18 U.S.C. § 1957.  Compl. ¶ 506.  *See United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003).  The same infirmities that plague the Complaint's § 981(a)(1)(C) claim (related to property traceable to criminal proceeds) render this claim flawed.  As described above, *see supra* Section I.B.1, the Complaint fails to allege that any of the participants in the purchase of the Defendant Properties knew they involved criminal property.  *See United States v. French*, 748 F.3d 922, 936 (9th Cir. 2014) (reversing § 1957 conviction where "government has not pointed to any evidence from which a rational trier of fact could infer that French knowingly engaged in a monetary transaction involving criminal property"); *see also Rubin v. Briscoe*, No. 12-cv-10140, 2013 WL 1700957, at *5 (C.D. Cal. Apr. 18, 2013) (finding § 1957 allegations deficient where plaintiffs failed to "connect any particular monetary transactions or unlawful activity to the money laundering predicate, nor does he allege whether the. . . Defendants had the requisite intent to launder funds in furtherance of a RICO scheme." (internal quotations omitted)).[14]

---

[14]   For purposes of alleged violation of Section 1957, moreover, the Government may not rely upon the knowledge of the seller, because a property seller, as the *recipient* of funds, does not "engage in a monetary transaction."  *See, e.g.*, *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir.1994); *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *9 (D. Md. Mar. 17, 2015).

20

BOIES, SCHILLER & FLEXNER LLP

SANTA MONICA, CALIFORNIA

As noted above, the Complaint must allege that someone acted with the requisite mental state in a transaction allegedly giving rise to the forfeiture of the Defendant Properties *in particular*.  It is not enough to allege that some participant had the appropriate mental state in some transactions alleged in this sprawling complaint, wholly unrelated to the Defendant Properties.  *See Michael Jackson Memorabilia I*, 2012 WL 8455336, at *4 ("While the Complaint does allege specific transactions and includes facts such as when, where, from whom and to whom various sums were transferred, and then proceeds to connect such transactions to the purchase of the Defendant Assets, the Complaint is puzzlingly silent as [to] facts showing that such transactions involved proceeds derived from an SUA, as required to prove money laundering.").

Stripped of extraneous allegations, the chain of alleged transactions relevant to the Defendant Properties is comparatively brief: the Complaint alleges that the proceeds of a 1MDB bond issuance were transferred to Aabar-BVI, and then to Red Granite Capital Limited where they were used to purchase the Defendant Properties.  To make a forfeiture claim based on § 1957, the Complaint must allege that somewhere in this chain—and not in other, unrelated transactions—there was a money laundering transaction made with the requisite knowledge.  And, as discussed above, the Complaint fails to make any such allegation.

## II.  THE COMPLAINT CONCLUSIVELY ESTABLISHES THAT CLAIMANT IS AN "INNOCENT OWNER"

The Complaint should also be dismissed because it conclusively establishes that the Claimant—the alleged 100% owner of the property, and the only claimant in this action—is an "innocent owner" under the forfeiture laws.  *See* 18 U.S.C. § 983(d)(3)(A). Although this is an affirmative defense not ordinarily evaluated on a motion to dismiss, *see id.* § 983(d)(1), plaintiffs can plead themselves out of court by making allegations that establish the defense.  *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1199-1200 n.5 (N.D. Cal. 2009).

The Complaint alleges that Claimants acquired each of the Defendant Properties at

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

a significant price, Compl. ¶¶ 317, 329, 496, making them "bona fide purchaser[s] . . . for value." 18 U.S.C. § 983(d)(3)(A)(i).  The Complaint also alleges the second prong of the innocent owner defense, because it alleges facts that establish that each Claimant (and its alleged beneficial owner, Mr. Aziz) "did not know and was reasonably without cause to believe that the property was subject to forfeiture." *Id.* § 983(d)(3)(A)(ii).  As detailed above, the Complaint fails to allege that Claimant or Mr. Aziz was involved in or knew about any transactions with 1MDB.  Rather, the Complaint alleges that the CEO of an Abu Dhabi investment fund gave Mr. Aziz a gift based on their "close personal relationship." Compl. ¶ 209.  After receiving advice from tax professionals, Mr. Aziz then secured a letter from Aabar's CEO documenting the gift, which he used to support his U.S. tax filings. *Id.*

The facts alleged in the Complaint further establish that Mr. Aziz and Claimants believed the funds to be entirely legitimate.  In addition to procuring the supporting letter from Aabar's CEO, the CEO also publicly stated that he funded Red Granite Pictures (another entity allegedly associated with Mr. Aziz). *Id.* ¶¶ 217-18.  Mr. Aziz is alleged to have entered into every transaction in his own name or through an entity that he reported on his U.S. tax returns, signed every document personally, and to have employed the services of lawyers, accountants and business managers in doing so. *Id.* ¶¶ 208, 317, 326, 496.  All of this establishes that Claimants "did not know and w[ere] reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A)(ii).

## III.   THE COMPLAINT SHOULD BE DISMISSED UNDER THE ACT OF STATE DOCTRINE

Finally, the Complaint must be dismissed for one independent reason: the Government will not be able to prove its case without requiring this Court to second-guess a sovereign decision of a foreign nation.  As a result, the "act of state" doctrine requires that the Complaint be dismissed.

Under that doctrine, U.S. courts may not "question the validity of public acts (acts

22

*jure imperii*) performed by other sovereigns within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing to challenge those acts." *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004); *see also W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990).

Here, the Complaint seeks relief that would effectively invalidate two acts by the Malaysian Attorney General.  But the act of state doctrine "precludes any review," *Federal Treasury Enterprise Sojuzplodoimport v. Spirits International B.V.*, 809 F.3d 737, 743 (2d Cir.), *cert. denied*, 137 S. Ct 160 (2016), of the validity of the Attorney General's findings that certain of the transactions described in the Complaint were genuine and legitimate, and that no criminal conduct occurred in connection with those transactions.  *See generally* Compl. ¶ 263 (referring to AG's statements).  These actions—and the Attorney General's simultaneous instruction to the Malaysian Anti-Corruption Commission ("MACC") to close its investigations—constitute "acts of state" and, under the act of state doctrine, "the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid."  *W.S. Kirkpatrick*, 493 U.S. at 409.

*First*, the Attorney General investigated certain of the transactions identified in the Complaint, and found them to be entirely innocent and unrelated to 1MDB.  *See generally* Jan. 26, 2016, Press Release, *In Relation to the Investigation Papers Returned by MACC on SRC International and "Rm2.6 Billion*," available at http://bit.ly/1Pzcds5 (Exh. G).[15]  *Second*, the Attorney General instructed the MACC to close its investigation of the allegedly diverted 1MDB funds.  *Id.* ("I will return the relevant investigation papers to MACC today with the instruction to close the three investigation papers[.]").  Although those findings pertain to only some of the transactions detailed in the Complaint, the Government's entire theory of the case presupposes that the Malaysia

---

[15]    The Attorney General's press release is quoted at length in paragraph 263 of the Complaint, and so appropriately considered on this motion.  *See generally Daniels-Hall v. Nationals Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010).

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

1    Attorney General's findings are factually and legally invalid.  There is therefore no way
2    for this litigation to proceed without a ruling from this Court on whether the Malaysian
3    Attorney General's sovereign functions were illegitimate.[16]

4         The court in *D'Angelo v. Petroleos Mexicanos* held that the act of state doctrine
5    bars claims based on conduct that a foreign governmental body investigated and decided
6    not to act upon.  422 F. Supp. 1280, 1281 (D. Del. 1976), *aff'd*, 564 F.2d 89 (3d Cir.
7    1977).  There, the President of Mexico created commissions that refused to recognize
8    claims asserted by the plaintiff.  *D'Angelo* held that the commissions' actions were acts
9    of state of the Mexican government and thus required the court to abstain from revisiting
10   the claims or reviewing the proceedings before the commissions.  *Id.* at 1288-89.

11        Just as in *D'Angelo*, the Government here is requesting this Court to declare
12   invalid Malaysia's Attorney General's official acts performed within Malaysia's own
13   territory.  As such, this Court should invoke the act of state doctrine and dismiss the
14   Complaint.  *Liu v. Republic of China*, 642 F. Supp. 297, 302-03 (N.D. Cal. 1986)
15   ("Clearly, a lawsuit that calls into question the propriety and thoroughness with which
16   another country has investigated and prosecuted wrongdoing by high level [government]
17   officials involving such a serious offense . . . touches 'sharply on national nerves.'")
18   (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428 (1964)).  As the
19   Second Circuit recently explained, "[i]f deference by any measure is to mean anything, it
20   must mean that a U.S. court not embark on a challenge to a foreign government's official
21   representation to the court regarding its laws or regulations, even if that representation is
22   inconsistent with how those laws might be interpreted under the principles of our legal
23   system."  *In re Vitamin C Antitrust Litig.*, 837 F.3d at 189.

---

[16]    The Complaint's broader allegations involving embezzlement from 1MDB and
Aabar, and the acts of various foreign officials, likewise implicate questions of
international comity that also require dismissal.  *See generally Timberlane Lumber Co. v.
Bank of Am., N.T. & S.A.*, 549 F.2d 597, 614–15 (9th Cir. 1976); *see also Trader Joe's
Co. v. Hallatt*, 835 F.3d 960, 972-73 (9th Cir. 2016) (citing *Timberlane*); *In re Vitamin C
Antitrust Litig.*, 837 F.3d 175, 184 (2d Cir. 2016) (applying *Timberlane* test "[t]o
determine whether to abstain from asserting jurisdiction on comity grounds").

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
S A N T A   M O N I C A ,   C A L I F O R N I A

1

## <u>CONCLUSION</u>

2       The Complaint should be dismissed.  Alternatively, pursuant to Federal Rule of

3   Civil Procedure 44.1, the Court should conduct a hearing on Malaysian and UAE law.  In

4   advance of any such hearing, Claimants will be prepared to submit to the Court "relevant

5   materials to aid in the interpretation of the [foreign law], including [additional] written or

6   oral expert testimony accompanied by extracts from various kinds of foreign legal

7   materials and foreign statutes, foreign judicial cases, and foreign law treatises." *United*

8   *States v. Real Prop. Known as Unit 5B of Onyx Chelsea Condo. Located at 261 W. 28th*

9   *St., N.Y., N.Y. 10001-5933*, No. 10 Civ. 5390 (GBD) (FM), 2011 WL 4359924, at *2

10  (S.D.N.Y. Sept. 19, 2011).

11

12  Dated:   February 10, 2017                Respectfully,

13                                            BOIES, SCHILLER & FLEXNER LLP
                                              *Attorneys for Claimant*
14                                            *912 North Hillcrest Road (BH), LLC*

15                                             /s/ Matthew L. Schwartz
16                                            MATTHEW L. SCHWARTZ
                                              575 Lexington Ave.
17                                            New York, New York 10022
                                              Telephone: (212) 446-2300
18                                            Fax: (212) 446-2350
                                              E-mail:  mlschwartz@bsfllp.com
19
                                              Karen Y. Paik (SBN 288851)
20                                            401 Wilshire Boulevard, Suite 850
                                              Santa Monica, California 90401
21                                            Telephone: (310) 752-2400
                                              Fax: (310) 752-2490
22                                            E-mail:  kpaik@bsfllp.com

23

24

25

26

27

28

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *Claimant 912 North Hillcrest Road (BH), LLC's Motion to Dismiss the Verified Complaint for Forfeiture In Rem Pursuant to Fed. R. Civ. P. 12(b)(6)*, as well as the accompanying *Declaration of Ali Al Hashimi* and its attachments were electronically filed on February 10, 2017, with the Clerk of the Court using the CM/ECF system thereby sending notice of electronic filing to all counsel of record.  In addition, I hereby certify that a true and correct copy of the foregoing was served by e-mail on Assistant U.S. Attorneys John J. Kucera and Christen Sproule.

DATED:  February 10, 2017

                                   /s/ Matthew L. Schwartz
                                    MATTHEW L. SCHWARTZ

CLAIMANT 912 NORTH HILLCREST ROAD (BH), LLC'S MOTION TO DISMISS THE
VERIFIED COMPLAINT FOR FORFEITURE IN REM PURSUANT TO FED. R. CIV. P. 12(b)(6)

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA